IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ASC UTAH, INC.; TALISKER CANYONS FINANCE CO. LLC,<br><br>Plaintiff,<br><br>vs.<br><br>WOLF MOUNTAIN RESORTS, L.C.,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:09CV303DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Plaintiffs ASC Utah Inc. and Talisker Canyons Finance Co. LLC's Motion for Summary Judgment. Defendant Wolf Mountain Resorts L.C. opposed the motion on the merits and filed a Rule 56(f) Objection and Motion. The court held a hearing on the motions on May 17, 2010. At the hearing, ASC Utah was represented by John Lund and Kara Pettit, Talisker was represented by John Ashton and Clark Taylor, and Wolf Mountain was represented by David Wahlquist and Clark Andreasson. The court heard argument and took the motion under advisement. After carefully considering the memoranda submitted by the parties and the facts and law relevant to the motion, the court enters the following Memorandum Decision and Order.

## BACKGROUND

On July 3, 1997, Wolf and ASCU executed a Ground Lease under which Wolf leased to ASCU certain land located in Summit County, Utah for the operation of a resort now known as The Canyons. ASCU and Wolf structured the Ground Lease in order to, among other things, grant ASCU, as the tenant, the right to assign or sublease any portion of the premises under certain conditions.

Section 10.02 of the Ground Lease sets forth those conditions and provides as follows: "Tenant shall not assign all or any portion of the Lease without obtaining the prior written consent of Landlord to any such assignment, which consent Landlord may not unreasonably withhold or delay." Furthermore, with certain enumerated exceptions, the parties agreed to "remain fully liable to perform their respective obligations under this Lease and the related Guaranty, notwithstanding any assignment permitted hereunder."

Section 10.02 of the Ground Lease addresses what would happen if ASCU was purchased by a third party:

> A sale of all or substantially all Tenant's assets [sic], or a transfer of record or beneficial ownership of more than 50% of the voting stock of Tenant to a party unaffiliated with Tenant, whether by merger, consolidation, or other reorganization, shall constitute an "assignment" for purposes of this Section 10.02. In such event, Landlord may not unreasonably withhold or delay its consent provided that the proposed successor or assign of Tenant shall be a person or business organization with financial condition and operating capability and expense reasonably adequate to operate the premises in a manner consistent with other comparably sized ski resorts throughout the United States.

Talisker proposed to purchase ASCU, and Wolf objected to the sale. The parties litigated that dispute in Utah state court. On February 8, 2008, on the eve of trial, Wolf gave its written consent, pursuant to Section 10.02 of the Ground Lease, to the sale of all of the issued and outstanding stock of ASCU to Talisker Canyons under the terms outlined in a Consent and Settlement Agreement ("Consent Document").

Pursuant to the Consent Document, Wolf consented to the acquisition of the outstanding capital stock of ASCU by Talisker Canyons with the transaction (the "Transaction") consisting of the following:

> (a) all of the issued and outstanding stock of ASC Utah will be conveyed by American Skiing Company to Talisker Canyons;
> (b) Talisker Canyons will pay $100 million for the ASC Utah stock, subject to certain adjustments . . . .;
> (c) The Ground Lease terms will remain unchanged;
> (d) The Ground Lease Guaranty dated July 3, 1997 from American Skiing Company to Wolf will remain unchanged . . . .;
> (e) The Reconveyance Agreement between ASC Utah and Wolf dated July, 1997 will remain unchanged;
> (f) The Leasehold Mortgage between ASC Utah and Wolf dated November 23, 2005 will remain unchanged;
> (g) All intercompany debt owed by ASC Utah to American Skiing Company (totaling approximately $110 million) will be eliminated at no cost to ASC Utah or Talisker Canyons;
> (h) Existing senior management personnel of ASC Utah are expected to remain in their respective management roles with ASC Utah for the foreseeable future after the closing of the stock sale;
> (i) Talisker Canyons will, immediately following acquisition of the ASC Utah stock, contribute $25 million in capital to ASC Utah;
> (j) ASC Utah and Wolf will have the benefit of that certain Keep Well Agreement dated August, 2007, as amended pursuant to amendment dated January 4, 2008 . . . .;
> (k) Talisker Canyons, Talisker Partnership and Talisker Developments Inc. agree that the Keep Well Agreement will not be modified, amended or terminated prior to the consummation of the ASCU stock sale . . . .; and
> (*l*) Immediately upon execution by all parties of this Consent Document, all parties shall cause their counsel to prepare and execute for filing a dismissal, with

prejudice, without attorney fees or costs to any party, of Summit County District Court Case No. 070500490. United States District Court for the District of Utah, Central Division, Case No. 2:07cv548 shall be dismissed, based on the joint stipulation that the court lacks subject matter jurisdiction.

The Consent Document also included an integration clause and provided that "there are no oral conditions or promises that supplement or modify this Consent Document."

On June 30, 2008, the sale of ASCU's stock to Talisker Canyons (the "Transaction") was consummated. After the sale, Wolf Mountain filed an action in Texas regarding the parties' rights and obligations under the Consent Document. ASCU and Talisker filed a motion to enforce the Consent Document in Utah state court. The state court judge denied the motion and advised the parties to file a declaratory judgment complaint. ASCU and Talisker then filed the instant complaint in this court seeking declaratory judgment on the parties' rights and obligations under the Consent Document.

## DISCUSSION

### Plaintiffs' Motion for Summary Judgment

Plaintiffs' brought their motion for summary judgment on the grounds that the parties' rights and obligations are clearly set forth in the parties' agreements and they are entitled to their requested declarations as a matter of law. Specifically, Plaintiffs contend that Wolf is obligated to honor the Consent Document in which Wolf consented, pursuant to Section 10.02 of the Ground Lease, to the sale of ASCU's stock to Talisker Canyons. Wolf claims, however, that Plaintiffs' motion for summary judgment is premature because there are ambiguities in the Consent Document and additional discovery is necessary. Thus, Wolf opposes the motion on the merits and filed a Rule 56(f) motion seeking additional time for discovery on certain issues prior

4

to the court's ruling on summary judgment.

While Plaintiffs argue that the undisputed facts establish that the sale of ASCU's stock to Talisker Canyons (the "Transaction") was consummated in accordance with the Consent Document, Wolf asserts that the several aspect of the Consent Document were either not complied with or are ambiguous. Under either party's theory of the case, the Consent Document is the central focus for this motion.

The Consent Document set forth twelve anticipated terms of the Transaction. The provisions most relevant to the present motion include: (1) Talisker Canyons payment of $100 million (plus adjustments) for ASCU's stock; (2) the elimination of ASCU's intercompany debt to ASC at no cost to ASCU or Talisker; and (3) Talisker Canyon's infusion of $25 million in capital into ASCU. Wolf contends that certain terms in these provision are ambiguous or that Plaintiffs failed to comply with the provisions as intended by the parties.

An unambiguous contract is interpreted according to its plain language and can be interpreted as a matter of law. *Trans-Western Petroleum, Inc. v. United States Gypsum Co.*, 584 F.3d 988, 993 (10th Cir. 2009) (applying Utah law on interpretation of contracts). Utah courts, however, have recognized that "contractual ambiguity can occur in two different contexts" – either a facial ambiguity with respect to the terms used in the document or an ambiguity as to the parties' intent. *Daines v. Vincent*, 2008 UT 51 ¶ 25, 190 P.3d 1269, 1275-76. But the court only looks into ambiguities relating to the parties' intent if it first determines that there is a facial ambiguity. *Id.* ¶ 25.

In determining facial ambiguity, Utah courts employ "a two-part standard." *Id.* ¶ 26. First, the court considers any relevant and credible evidence of contrary interpretations. *Id.*

Second, the court "must ensure that 'the interpretations contended for are reasonably supported by the language of the contract.'" *Id.* There is no preference, however, for extrinsic evidence considered under the first standard. *Id.* ¶ 27. Such evidence can give the court an understanding of the circumstances surrounding the formation of the agreement, but it cannot create ambiguity unless it demonstrates that a contrary interpretation of the actual contractual language is reasonable. *See id.* ¶ 27-30. "[A] party cannot make a successful claim of ambiguity based on usage of a term that is not reasonable or is the product of 'forced of strained construction.'" *Id.* ¶ 30 n.5 A finding of ambiguity, therefore, "will prove to be the exception and not the rule." *Id.* ¶ 30.

With these guidelines for determining contractual ambiguity in mind, the court will analyze each of the disputed provisions in the Consent Document. First, Wolf contends that the sale did not comply with the term in section (b) that Talisker Canyons will "pay" $100 million for the ASCU stock. Wolf admits that Talisker Canyon's method of payment, with $71 million of the ultimate $123 million purchase price paid through seller financing in the form of a promissory note and the rest paid in cash, is indeed one way to "pay" for the ASCU stock. Wolf, however, asserts that it was the intention of the parties that the payment be in cash.

Plaintiffs, on the other hand, argue that the Consent Document does not limit the Transaction to any particular type of consideration, financing, or method of payment. The document simply states that: "Talisker Canyons will pay $100 million for the ASC Utah stock, subject to certain adjustments…." The question for the court on summary judgment, therefore, is whether the term "pay" in the Consent Document is ambiguous.

In this case, Plaintiffs argue that the term "pay" does not require payment to be made in

6

cash and does not prohibit seller financing. Black's Law Dictionary (8th ed. 2004) states that "payment"' means: "Performance of an obligation by the delivery of money *or some other valuable thing* accepted in partial or full discharge of the obligation." (emphasis added); *see also* 10 C.J.S. *Bills and Notes* Sec. 260 (2009) (noting that "any mode of payment accepted by the holder as such is binding on him or her. Payment may be made in anything or in any manner the holder is willing to accept.") Wolf claims that by citing to Black's Law Dictionary to define "payment," Plaintiffs have admitted that the Consent Document does not define the term "pay" within its four corners.

Wolf argues that because the term "pay" is not defined in the Consent Document that it is capable of more than one reasonable interpretation. Wolf claims that its cash-only interpretation of "pay" is supported by the Affidavit of Bruce C. Moore which states that "[i]n reaching the Settlement Agreement, ASCU and Talisker Canyons represented to [him] . . . that Talisker Canyons would pay $100 million in cash to purchase ASCU." Moore's Affidavit also states that to the best of his recollection, this representation was also made to the state court judge at the time that the parties were reaching a settlement. In a hearing in state court, ASCU's counsel asserted that Talisker Canyons "would plop a hundred million dollars down" to buy ASCU. Wolf further argues that the Purchase Agreement supports its interpretation that payment would be in cash because it states that the money would be "wired."

While there appears to have been discussions prior to the parties' execution of the Consent Document regarding the method of payment, a cash-only interpretation of the term pay is not reasonably supported by the language of the Consent Document. The parties did not write any specific method of payment into the Consent Document. Rather, the parties both agreed on

7

the use of the general term "pay." If payment in cash was a critical element of the agreement for Wolf, Wolf and its counsel should have included language to that effect. The Consent Document contains an integration clause and a provision stating that "there are no oral conditions or promises that supplement or modify this Consent Document." Moreover, contemporaneous discussions that the payment would be in cash fail to establish that the parties intended to preclude any other method of payment. Adding the terms "in cash" to the Consent Document would significantly amend the Consent Document and amount to a rewriting of the agreement. Wolf was involved in the drafting of the Consent Document, it was represented by able counsel, and it is bound by the plain terms of the agreement into which it entered. Wolf seeks more discovery into the parties intent, but the court finds that such discovery could not override the plain language of the agreement. The court, therefore, concludes that the term "pay," as used in the Consent Document, is not ambiguous as a matter of law.

The second term with which Wolf takes issue is in Section (g) of the Consent Document. Section (g) requires that "all intercompany debt owed by ASC Utah to American Skiing Company (totaling approximately $110 million) be eliminated at no cost to ASC Utah or Talisker Canyons." Wolf states that this issue is not necessarily a question of ambiguity, but may be viewed more properly as a question of compliance with the terms of the Consent Document.

Wolf does not dispute that an Officer's Certificate was issued in connection with this requirement. But Wolf questions whether the Officer's Certificate actually eliminated the debt and whether it was done "at no cost" to ASCU. First, Wolf contends that language in the Officer's Certificate does not actually eliminate the debt. The Certificate states that "[n]othing in this certificate shall be construed as a waiver of any liabilities, accounts payable or other

8

obligations from [ASCU] to ASC or any of its Affiliates . . . in connection with or pursuant to the Purchase Agreement or any other document executed in connection with the Closing." The court agrees that the presence of this language in a document specifically designed to eliminate debt is confusing at best.

Next, Wolf claims that a promissory note executed at the closing of the Transaction violates Section (g) because under the new promissory note ASCU became obligated to pay $71 million to ASC. Wolf asserts that ASCU's guarantee acted as a "replacement" of ASCU's debt to ASC and, thus, the elimination of debt, to the extent the Certificate may have done so, was not at "no cost to ASCU." The elimination of debt appears to have been done only because ASCU agreed to become the guarantor of a new promissory note to ASC.

Plaintiffs assert that the court should look only at the time of the sale. Plaintiffs contend that the Officer's Certificate demonstrates that debt was eliminated at the time of the Transaction and any post-Transaction promissory is irrelevant. However, the Consent Document does not state "at the time of sale," it merely states that the debt "will be" eliminated at "no cost" to ASCU. In this instance, Plaintiffs appear to be the party seeking to insert language into the Consent Document that is not actually in the agreement. Because the Consent Document contains no clear temporal element to the elimination of ASCU's debt, there is a question as to whether the promissory note merely replaced the prior debt, and there is a question as to whether the Officer's Certificate actually eliminated the debt, the court concludes that it cannot grant Plaintiffs' request for summary judgment on this issue. The parties should conduct further discovery in connection with the requirements of this provision prior to seeking a ruling from the court declaring the parties rights and obligations.

Third, Wolf asserts that Talisker Canyons did not provide $25 million in capital to ASCU as required by Section (i) of the Consent Document. Section (i) states that "Talisker Canyons will, immediately following acquisition of the ASC Utah stock, contribute $25 million in capital to ASC Utah."  It is undisputed that Talisker has submitted a Wells Fargo bank statement for ASCU showing a deposit of $25 million.

Wolf, however, contends that the requirement is ambiguous because the money was intended to be put into operations of the resort and not pledged to service Talisker's obligations. Wolf claims that the import of this provision is that once Talisker purchased ASCU, ASCU would have new capital to use.  Wolf states that ASCU's counsel represented to the state court that ASCU would be supported by Talisker "in the sense of having $25 million ready and available" to use for development.  Wolf claims that, at a minimum, the meaning of the $25 million contribution is ambiguous.

Plaintiffs, however, argue that section (i) plainly and unambiguously states that Talisker will "contribute $25 million in capital" to ASCU, and nothing in this requirement refers to funding ASCU's operation of the resort.  Plaintiffs further assert that  Wolf's true complaint is not that the Consent Document is ambiguous, but that it wishes in hindsight that it had drafted the document differently so that it dictated the manner of use for that capital.  But if Wolf felt so strongly about how the capital was to be used, Plaintiffs contend that Wolf should have included a separate clause in the Consent Document prohibiting ASCU from guaranteeing any promissory note of Talisker Canyons.

The court concludes that nothing in Section (i)'s requirement that Talisker contribute capital to ASCU is ambiguous.  Talisker was required to contribute a specific amount of money

in capital and it did so. Nothing in the Consent Document attempts to direct how ASCU would use the capital. The court cannot write in such requirements and an interpretation containing such requirements is not supported by the language of the Consent Document. As with the challenge to the term "pay" above, the court does not believe that additional discovery would produce a different result. Accordingly, the court concludes that Plaintiffs are entitled to summary judgment as to the rights and obligations under Section (i) of the Consent Document.

Plaintiffs further argue that they are entitled to summary judgment because when Wolf executed the Consent Document, it gave its irrevocable consent to Talisker Canyons' acquisition of ASCU's stock and Wolf is estopped from taking any action in derogation of that consent. *See e.g. Flukinger v. Straughan*, 795 S.W.2d 779, 790-91 (Tex. App. 1990) (holding that lessor having consented to assignment of lease was estopped from challenging that assignment); *Brazeal v. Bokelman*, 270 F.2d 943, 947 (8th Cir. 1959) (stating that a lessor, having a right of forfeiture may waive such right either expressly or by his conduct, and the right to forfeit may be lost by estoppel); *KTVB, Inc. v. Boise City*, 486 P.2d 992, 994 (Idaho 1971) (noting that quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken by him).

Wolf, however, does not appear to be seeking to rescind its consent as much as it seeks to enforce what it believes are the terms of the agreement providing the consent. The court fails to see a legal basis for stating that Wolf is estopped from challenging the meaning of certain terms in the Consent Document or questioning the parties rights and obligations under the Consent Document. The court, therefore, concludes that Wolf's contentions with respect to certain provision in the Consent Document should be addressed on the merits rather than barred on the

grounds of estoppel.

In conclusion, the court finds that the Consent Document is clear and unambiguous as to the requirements in Section (b) regarding "pay" and Section (i) regarding the contribution of capital. The court, however, concludes that the requirements of Section (g) regarding the elimination of intercompany debt "at no cost" to ASCU are ambiguous and require additional discovery prior to the court's ruling on the rights and duties of the parties. Furthermore, the court finds no basis for determining that Wolf is estopped from raising questions or disputes as to the requirements of the Consent Document.

## CONCLUSION

For the foregoing reasons, the court grants Plaintiffs' Motion for Summary Judgment as to Section (b) and Section (i) of the Consent Document and denies it as premature with respect to Section (g) of the Consent Document. Accordingly, Plaintiffs' Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART, and Defendant's Objection and Rule 56(f) Motion is GRANTED IN PART AND DENIED IN PART.

DATED this 10th day of June, 2010.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge